**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEREMY STEPHENS AND | ) | |
| CORTEZ HARRIS, | ) | |
|     Plaintiffs, | ) | |
| | ) | JURY DEMANDED |
| | ) | |
| | ) | CASE #: |
| | ) | JUDGE: |
| | ) | MAGISTRATE JUDGE: |
| | ) | |
| DEGEATANO ENTERPRISES INC. | ) | |
| d/b/a/ JIFFY LUBE STORE #234, and | ) | |
| JOHN DOE, JIFFY LUBE EMPLOYEE | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, CORTEZ HARRIS ("HARRIS") and Plaintiff JEREMY STEPHENS

("STEPHENS") by their undersigned attorney, and for their complaint against Defendants, state

as follows:

**NATURE OF THE CASE**

1. The cause of action for Plaintiffs arise under 42 U.S.C. section 1981 *et seq*.

2. That Plaintiffs' desire and attempt to enter into a relationship with and purchase, enjoy and

    obtain services from Defendants qualifies as a contractual relationship under 42 U.S.C.

    Section 1981.

3. 42 U.S.C. section 1981 *et seq*. protects individuals from discriminatory treatment by granting all persons the right to make and enforce contracts regardless of race.

## **JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter under 28 U.S.C. section 1331 as claims for relief arise from 42 U.S.C. section 1981 *et seq*.

5. This court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e, 28, U.S.C. § 1331, and 28 U.S.C. § 1367.

6. Venue is proper in the Northern District of Illinois, Eastern Division. The claims for relief arose in Cook County, Illinois.

## **PARTIES**

7. Plaintiff Jeremy Stephens is a black male and a resident of Illinois.

8. Plaintiff Cortez Harris is a black male and a resident of Illinois.

9. Defendant, Degeatano Enterprises Inc. is duly registered to conduct business in the state of Illinois, having substantial business operations at 215 South Harlem Avenue, Oak Park, Illinois, 60302.

10. Defendant maintains operations in Cook County, Illinois.

11. Defendant, [Name Unknown] "John Doe" is a Hispanic male and a resident of Illinois.

12. At all times pertinent hereto, Defendant John Doe [Name Unknown], was an employee of Jiffy Lube Inc.

13. At all times pertinent hereto, Defendant, Degeatano Enterprises Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the (20) or more calendar weeks in the current or preceding calendar year.

14. At all times relevant herein, EMPLOYEE was employed by Jiffy Lube and Degeatano Enterprises Inc.

## GENERAL ALLEGATIONS

15. That Plaintiffs' desire and attempt to enter into a relationship with and purchase, enjoy and obtain services from Defendants qualifies as a contractual relationship under 42 U.S.C. Section 1981.

16. That Harris accompanied his friend to Defendants' place of business pursuant to Stephens' ongoing business transaction regarding Stephens' car.

17. That Jiffy Lube used improper oil to repair Stephens's car.

18. That this improper oil caused Stephens's car to quickly break down in the middle of the expressway.

19. That Stephens and Harris went to Jiffy Lube to follow up with Jiffy Lube about the maintenance of the car.

20. That the two Plaintiffs were of peaceable and welcoming demeanor and nature.

21. That upon arriving at the Jiffy Lube on 215 South Harlem, Oak Park, 60302, the Plaintiffs began to discuss the ongoing maintenance of Stephens' car with the Store Manager.

22. The Store Manager is a woman.

23. The Store Manager is white.

24. The Store Manager began to explain Jiffy Lube's position as to the maintenance of the car.

25. John Doe, Jiffy Lube Employee, was visibly irate, angry and discontent.

26. That John Doe felt this way because Plaintiffs are African Americans.

27. That while the parties were discussing the maintenance of the car, there were other customers present in the Jiffy Lube lobby.

4

28. That the parties then took their discussion of the car maintenance outside of the lobby for the benefit of the other customers and clarity of conversation.

29. That after being outside for approximately 2 or 3 minutes, Plaintiffs and Store Manager briefly went back inside to gather writing materials to document the facts of Plaintiffs' maintenance.

30. That the nature of the conversation between Plaintiffs and Store Manager was pleasant, cordial, and polite.

31. That while inside, John Doe was staring Plaintiffs down and appeared threatening.

32. That John Doe was still irate, angry and discontented with Plaintiffs' presence at Jiffy Lube.

33. That John Doe remained inside for the initial portion of the outside conversation between Plaintiffs and Store Manager.

34. That while Store Manager and Plaintiffs were outside for the second time discussing the maintenance of the car, John Doe then reappeared outside and joined the conversation between Plaintiffs and Store Manager.

35. That John Doe walked up with apparent anger and irritation.

36. That while John Doe was walking up to Plaintiffs and Store Manager, both Plaintiffs saw that one of Doe's hands remained in his pocket.

37. That John Doe threateningly walked over asked Store Manager "You good with these Black motherfuckers?"

38. That Plaintiffs understood John Doe's conduct to be a veiled threat of violence towards Plaintiffs.

39. That John Doe then pulled a black firearm with a white handle from his pocket using the hand that had been in his pocket during the walk over.

40. That because of John Doe's comments Plaintiffs understood the firearm's use to be directly related to their safety and wellbeing.

41. That Plaintiffs understood the firearm's presence to related to their race.

42. That Plaintiffs understood the use of the firearm to be intended to threaten, frighten, intimidate, and silence Plaintiffs.

43. That Plaintiffs feared for their lives.

44. That Plaintiffs were deeply frightened and offended by the use and presence of the gun in the hands of an angry, frustrated, and racially motivated man.

45. After brandishing the weapon, Doe began to walk away to a distance of about 15 yards away.

46. That as John Doe was walking away, John Doe shouted "Fuck them black motherfuckers!"

47. That Plaintiff Stephens then called the police and began to relay information as it was happening to the police.

48. That Store Manager then walked over to where Doe had stationed himself and tried to calm him down.

49. That Doe refused to calm down.

50. That Store Manager then walked back over to where Plaintiffs were located.

51. That Store Manager began to downplay John Doe's behavior to Plaintiffs.

52. That Store manager said, "don't mind him."

53. That Store Manager said, "He's just crazy."

54. That Store Manager said, "He's just off."

55. That due to the lack of shock, corrective action, or other appropriate response, Plaintiffs understood Store Manager's statements to be reflective of Store Manager's knowledge, tolerance, and prior notice of John Doe's character, behaviors, tendencies, and nature.

56. That due to the lack of shock, corrective action, or other appropriate response, Plaintiffs understood Store Manager's statements to be reflective of Store Manager's knowledge, tolerance, and prior notice of John Doe's racially charged animus towards African Americans.

57. That due to the lack of shock, corrective action, or other appropriate response, Plaintiffs understood Store Manager's statements to be an attempt to make excuses for John Doe and to gaslight Plaintiffs out of their legitimate experience.

58. That Plaintiffs understood that John Doe was behaving this way because of their race, African American.

59. That Store Manager then tried to convince Plaintiffs that the weapon had not been a firearm, but rather was a can of mace.

60. Both Plaintiffs knew this to be untrue.

61. That while on the phone with the police, Plaintiff Stephens knew that the weapon was not mace, so then he told Store Manager "if it's mace, have him show us."

62. That Plaintiff Stephens repeated this line two or three times.

63. That John Doe overheard this exchange between the Plaintiffs and Store Manager.

64. That by this time John Doe was firing off profanities of all sorts, many of which were racially related, including the following paragraphs.

65. That John Doe shouted, "fuck you N------!" several times.

66. That John Doe shouted, "fuck them N------!" several times.

67. That John Doe shouted, "Oh you a tough N-----?" several times to Plaintiffs, especially Plaintiff Harris.

68. That John Doe shouted, "I'll shoot the shit out of these black motherfuckers!"

69. That in response to Plaintiff Stephens asking Store Manager about the weapon being "mace" John Doe shouted, "You want to see it?"

70. That John Doe again said, "You want to see it?"

71. That John Doe again said, "You want to see it?"

72. That John Doe then again withdrew his firearm from his pocket.

73. That both Plaintiffs feared John Doe would shoot them.

74. That both Plaintiffs feared that John Doe would shoot them because of their race.

75. That both Plaintiffs saw John Doe pull the firearm from his pocket.

76. That John Doe then actually pointed the firearm at Plaintiffs.

77. That John Doe was still shouting these racial profanities at Plaintiffs at this time.

78. That both Plaintiffs feared because there was no place for them to hide.

79. That Plaintiffs feared that John Doe intended to shoot them.

80. That Plaintiffs feared that John Doe intended to shoot them because of their race.

81. That Plaintiffs feared that John Doe would cause them severe bodily injury.

82. That while Plaintiffs were talking to Store Manager, another Jiffy Lube employee told Store Manager to disregard the Plaintiffs' concerns because "you know how they are."

83. That Plaintiffs understood this comment to be related to Plaintiffs' race, African American.

84. That Plaintiffs understood this comment to be indicative of Jiffy Lube's racial animus towards African Americans.

85. That Plaintiffs understood that the employee would not have made this comment had Plaintiffs not been African American.

86. That Plaintiffs understood the employee's comment to be disruptive to Plaintiffs' rights to contract without racial interference.

87. That Plaintiffs understood John Doe's behavior to be disruptive to Plaintiffs' rights to contract without racial interference.

88. That in response to Plaintiff Stephens' call to the police, the police were dispatched to the Jiffy Lube.

89. That as the police were on their way, the police sirens could be heard by Plaintiffs and John Doe.

90. That as the police were approaching, John Doe rushed to his car.

91. That as the police were approaching, John Doe started his car.

92. That as the police were approaching, John Doe quickly drove away from the Jiffy Lube.

93. That Jiffy Lube did not take corrective action to protect Plaintiffs from the violence, threats of violence, and racially motivated accosting.

## **COUNT I**

## **COMPLAINT OF CORTEZ HARRIS FOR RACE DISCRIMINATION AND HARASSMENT PURSUANT TO 42. U.S.C. SEC. 1981 AGAINST ALL DEFENDANTS.**

94. That Plaintiff Harris incorporates all preceding and subsequent paragraphs into Count I against all Defendants.

95. That Defendants had a duty towards Plaintiff to comply with all racial discrimination and harassment laws, including 42 U.S.C. Section 1981.

96. That 42 U.S.C. Section 1981 protects individuals from discriminatory treatment by granting all persons the right to make and enforce contracts regardless of race.

97. That Plaintiffs' desire and attempt to enter into a relationship with and purchase, enjoy and obtain services from Defendants qualifies as a contractual relationship under 42 U.S.C. Section 1981.

98. That Degeatano Enterprises Inc. owns and does business as the relevant Jiffy Lube.

99. Degeatano Enterprises Inc. had a duty to control the behavior of their employees into complying with all racial harassment and discrimination laws including 42 U.S.C. Section 1981.

100. That John Doe's behavior was racially motivated.

101. That John Doe's racial animus and prejudice is evidenced by the quantity and vulgarity of John Doe's comments.

102. That John Doe repeatedly used harsh racial slurs directed at Plaintiffs.

103. That John Doe repeatedly threatened deadly force and violence against the Plaintiffs.

104. That the other Jiffy Lube employee encouraged Store Manager to deny Plaintiffs remedies and redress because "you know how they [African Americans] are."

105. That Defendants' conduct amounts to an interference in Plaintiffs' right to desire and attempt to enter into a relationship with and purchase, enjoy and obtain services from Defendants qualifies as a contractual relationship under 42 U.S.C. Section 1981.

13

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to provide the following
equitable and legal remedies:

a)      Advance the case on the docket, order a speedy hearing at the earliest practicable date,

    and cause this case to be expedited in every possible way;

b)      Order a permanent injunction prohibiting Defendant from further acts of racial

    harassment;

c)      Award Plaintiff all costs of litigation, including reasonable attorneys' fees and expert fees

    and expenses;

d)      Award Plaintiff all relief available under §1981; and

e)      Grant such other and further relief as this Honorable Court deems just and proper.


**COUNT II**

**COMPLAINT OF JEREMY STEPHENS FOR RACE DISCRIMINATION AND
HARASSMENT PURSUANT TO 42. U.S.C. SEC. 1981 AGAINST ALL DEFENDANTS.**


106.    That Plaintiff Stephens incorporates all preceding and subsequent paragraphs into Count

    II against all Defendants.


107.    That Defendants had a duty towards Plaintiffs to comply with all racial discrimination

    and harassment laws including 42 U.S.C. Section 1981.

108.   That 42 U.S.C. Section 1981 protects individuals from discriminatory treatment by granting all persons the right to make and enforce contracts regardless of race.

109.   That Plaintiffs' desire and attempt to enter into a relationship with and purchase, enjoy and obtain services from Defendants qualifies as a contractual relationship under 42 U.S.C. Section 1981.

110.   That Degeatano Enterprises Inc. owns and does business as the relevant Jiffy Lube.

111.   Degeatano Enterprises Inc. had a duty to control the behavior of their employees into complying with all racial harassment and discrimination laws including 42 U.S.C. Section 1981.

112.   That John Doe's behavior was racially motivated.

113.   That John Doe's racial animus and prejudice is evidenced by the quantity and vulgarity of John Doe's comments.

114.   That John Doe repeatedly used harsh racial slurs directed at Plaintiffs.

115.   That John Doe repeatedly threatened deadly force and violence against the Plaintiffs.

15

116.    That the other Jiffy Lube employee encouraged Store Manager to deny Plaintiffs

remedies and redress because "you know how they [African Americans] are."

117.    That Defendants' conduct amounts to an interference in Plaintiffs' right to desire and

attempt to enter into a relationship with and purchase, enjoy and obtain services from

Defendants qualifies as a contractual relationship under 42 U.S.C. Section 1981.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to provide the following

equitable and legal remedies:

a)    Advance the case on the docket, order a speedy hearing at the earliest practicable date,
      and cause this case to be expedited in every possible way;

b)    Order a permanent injunction prohibiting Defendant from further acts of racial
      harassment;

c)    Award Plaintiff all costs of litigation, including reasonable attorneys' fees and expert fees
      and expenses;

d)    Award Plaintiff all relief available under §1981; and

e)    Grant such other and further relief as this Honorable Court deems just and proper.

### **COUNT III**

### **COMPLAINT OF CORTEZ HARRIS FOR ASSAULT AGAINST ALL DEFENDANTS.**

16

118.     That Plaintiff Harris incorporates all preceding and subsequent paragraphs into Count III against all Defendants.

119.     That Defendants had a duty towards Plaintiff Harris to refrain from engaging in violent tortious activity.

120.     That Defendant Degeatano had a duty towards Plaintiff to control the behavior of its employees with regard to tortious activities and ensuring Plaintiffs' safety.

121.     That Defendants had a duty towards Plaintiff to ensure Plaintiff's safety as it relates to the behavior of its employees.

122.     That John Doe intentionally acted to cause Plaintiff Harris to apprehend an imminent harmful or offensive bodily contact.

123.     That John Doe acted intentionally by repeatedly pulling his gun out from his pocket and pointing the gun at Plaintiff Harris.

124.     That John Doe's intentional act caused Plaintiff Harris to apprehend the imminent bodily harm of being shot.

125.     That John Doe's intentional act caused Plaintiff Harris to apprehend the imminent offensive contact of being shot on account of Plaintiff's race.

17

126.    That the behavior of John Doe constitutes assault against Plaintiff Harris.

127.    That Store Manager's comments about knowing John Doe to be "crazy" or 'off' reflects her knowledge of Doe's reckless, dangerous, racist, and aggressive behavior.

128.    That Defendant Degeatano negligently supervised John Doe by allowing him to enter the workplace with a firearm.

129.    That Defendant Degeatano negligently supervised John Doe by allowing John Doe to pull the firearm out from Doe's pocket and display it to Plaintiff without reprimanding, punishing, terminating, or even meaningfully physically separating Doe from Plaintiff Harris.

130.    That Defendant Degeatano negligently supervised John Doe by allowing John Doe to point the firearm at Plaintiff without reprimanding, punishing, terminating, or even meaningfully physically separating Doe from Plaintiff Harris.

131.    That these facts amount to negligent supervision of John Doe.

132.    That these facts amount to negligent retention of John Doe.

133.    That these facts amount to assault by John Doe against Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a.   Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.   Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.   Award Plaintiff a judgment against Defendants for compensatory damages for any injury, fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Defendants' conduct.

d.   Grant judgment against Defendants for punitive damages for willful and wanton conduct.

e.   Grant such other and further relief as this court deems just and proper.

## **COUNT IV**

## COMPLAINT OF JEREMY STEPHENS FOR ASSAULT AGAINST ALL DEFENDANTS.

134.    That Plaintiff Stephens incorporates all preceding and subsequent paragraphs into Count

IV against all Defendants.


135.    That Defendants had a duty towards Plaintiff Stephens to refrain from engaging in violent

tortious activity.


136.    That Defendant Degeatano had a duty towards Plaintiff to control the behavior of its

employees with regard to tortious activities and ensuring Plaintiffs' safety.


137.    That Defendants had a duty towards Plaintiff to ensure Plaintiff's safety as it relates to

the behavior of its employees.


138.    That John Doe intentionally acted to cause Plaintiff Stephens to apprehend an imminent

harmful or offensive bodily contact.


139.    That John Doe acted intentionally by repeatedly pulling his gun out from his pocket and

pointing the gun at Plaintiff Stephens.


140.    That John Doe's intentional act caused Plaintiff Stephens to apprehend the imminent

bodily harm of being shot.

141.    That John Doe's intentional act caused Plaintiff Stephens to apprehend the imminent offensive contact of being shot on account of Plaintiff's race.

142.    That the behavior of John Doe constitutes assault against Plaintiff Stephens.

143.    That Store Manager's comments about knowing John Doe to be "crazy" or 'off" reflects her knowledge of Doe's reckless, dangerous, racist, and aggressive behavior.

144.    That Defendant Degeatano negligently supervised John Doe by allowing him to enter the workplace with a firearm.

145.    That Defendant Degeatano negligently supervised John Doe by allowing John Doe to pull the firearm out from Doe's pocket and display it to Plaintiff without reprimanding, punishing, terminating, or even meaningfully physically separating Doe from Plaintiff Stephens.

146.    That Defendant Degeatano negligently supervised John Doe by allowing John Doe to point the firearm at Plaintiff without reprimanding, punishing, terminating, or even meaningfully physically separating Doe from Plaintiff Stephens.

147.    That these facts amount to negligent supervision of John Doe.

148.    That these facts amount to negligent retention of John Doe.

149.    That these facts amount to assault by John Doe against Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.    Award Plaintiff a judgment against Defendants for compensatory damages for any injury, fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Defendants' conduct.

d.    Grant judgment against Defendants for punitive damages for willful and wanton conduct.

e.   Grant such other and further relief as this court deems just and proper.

## COUNT V

## COMPLAINT OF CORTEZ HARRIS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS.

150.   That Plaintiff Harris incorporates all preceding and subsequent paragraphs into Count V against all Defendants.

151.   That Defendants had a duty towards Plaintiff Stephens to refrain from engaging in violent tortious activity.

152.   That Defendant Degeatano had a duty towards Plaintiff to control the behavior of its employees with regard to tortious activities and ensuring Plaintiffs' safety.

153.   That Defendants had a duty towards Plaintiff to ensure Plaintiff's safety as it relates to the behavior of its employees.

154.   That John Doe's behavior amounts to Intentional Infliction of Emotional Distress.

155.   That John Doe acted intentionally in an outrageous manner that was caused Plaintiff emotional severe emotional distress.

156.   That John Doe acted intentionally by pulling the gun from his pocket multiple times.

157.   That John Doe's outrageous conduct was in pulling out his gun multiple times and pointing the gun at Plaintiff.

158.   That John Doe's outrageous conduct was in shouting racial profanities while pointing a real firearm at Plaintiff.

159.   That John Doe's outrageous behavior was beyond all bounds of common decency.

160.   That Defendant Degeatano negligently supervised John Doe.

161.   That Defendant Degeatano negligently retained John Doe.

162.   That Defendant Degeatano negligently protected Plaintiff.

163.   Because Defendant Degeatano was negligent in their dealings with Plaintiff and John Doe, Defendant Degeatano is liable for John Doe's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a.      Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.      Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.      Award Plaintiff a judgment against Defendants for compensatory damages for any injury, fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Defendants' conduct.

d.      Grant judgment against Defendants for punitive damages for willful and wanton conduct.

e.      Grant such other and further relief as this court deems just and proper.

## COUNT VI

## COMPLAINT OF JEREMY STEPHENS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS.

164.    That Plaintiff Harris incorporates all preceding and subsequent paragraphs into Count V against all Defendants.

165.    That Defendants had a duty towards Plaintiff Stephens to refrain from engaging in violent tortious activity.

166.    That Defendant Degeatano had a duty towards Plaintiff to control the behavior of its employees with regard to tortious activities and ensuring Plaintiffs' safety.

167.    That Defendants had a duty towards Plaintiff to ensure Plaintiff's safety as it relates to the behavior of its employees.

168.    That John Doe's behavior amounts to intentional infliction of emotional distress.

169.    That John Doe acted intentionally in an outrageous manner that was caused Plaintiff emotional severe emotional distress.

170.    That John Doe acted intentionally by pulling the gun from his pocket multiple times.

171.    That John Doe's outrageous conduct was in pulling out his gun multiple times and pointing the gun at Plaintiff.

172.    That John Doe's outrageous was in shouting racial profanities while pointing a real firearm at Plaintiff.

173. That John Doe's outrageous behavior was beyond all bounds of common decency.

174. That Defendant Degeatano negligently supervised John Doe.

175. That Defendant Degeatano negligently retained John Doe.

176. That Defendant Degeatano negligently protected Plaintiff.

177. Because Defendant Degeatano was negligent in their dealings with Plaintiff and John Doe, Defendant Degeatano is liable for John Doe's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.    Award Plaintiff a judgment against Defendants for compensatory damages for any injury, fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Defendants' conduct.

d.    Grant judgment against Defendants for punitive damages for willful and wanton conduct.

e.    Grant such other and further relief as this court deems just and proper.

Respectfully Submitted,

Plaintiffs Harris and Stephens,

By: s/Uche O. Asonye
    Uche O. Asonye
    One of Their Attorneys

Uche O. Asonye - 6209522
ASONYE & ASSOCIATES
100 N LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
(312) 795-9114 (f)

## **JURY DEMAND**

NOW COMES the Plaintiffs, Cortez Harris and Jeremy Stephens, by and through their

attorney, and hereby demand a trial by jury in the above entitled cause of action.

Respectfully Submitted,

Plaintiffs Harris and Stephens,

By: s/Uche O. Asonye
    Uche O. Asonye
    One of Their Attorneys

Uche O. Asonye - 6209522
ASONYE & ASSOCIATES
100 N LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
(312) 795-9114 (f)