**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEREMY STEPHENS and** | ) | |
| **CORTEZ HARRIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 23-cv-2058** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **DEGEATANO ENTERPRISES INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Jeremy Stephens and Cortez Harris bring this action against defendants Degeatano Enterprises Inc. ("Degeatano"), Joseph Aleman, and Rafael Aleman for alleged spoliation of evidence, race discrimination, assault, intentional infliction of emotional distress, conspiracy, and failure to prevent a conspiracy, arising from a confrontation that took place between plaintiffs, Joseph, and Rafael outside Degeatano's Jiffy Lube location in Oak Park, Illinois.

Defendants move to dismiss plaintiffs' Second Amended Complaint ("SAC"), (Dckt. #23), pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs have not sufficiently alleged certain elements of their claims. As explained below, defendants' arguments (1) are primarily based on their incorrect assertion that plaintiffs fail to allege Joesph possessed apparent authority to act on behalf of Degeatano; and (2) improperly ask this Court to view plaintiffs' allegations in the light most favorable to defendants when considering defendants' motions to dismiss. For these reasons, and the reasons discussed more fully below, defendants' motions to dismiss, (Dckt. ##28, 46), are denied.

## I.  LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).  Moreover, "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024).  Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up).

## II.  FACTUAL BACKGROUND[1]

Degeatano owns and does business as Jiffy Lube, located at 215 South Harlem, Oak Park, Illinois, 60302.  (Dckt. #23 ¶¶13, 25).  On December 13, 2022, Stephens and Harris (both African American men) entered the Jiffy Lube to discuss maintenance that was previously performed on Stephens' car.  (*Id.* ¶¶9–10, 23, 25).  At Jiffy Lube, plaintiffs initiated discussions

---

[1] The following facts are taken from the SAC and the documents attached thereto, including a copy of the relevant police report, a video which depicts part of the incident, and an evidence preservation letter because those documents are referred to in plaintiffs' SAC and are central to their claims.

about Stephens' car with Zulma Cancel ("Cancel"), the store manager, in the lobby. (*Id.* ¶¶25, 31). At the time, defendant Joseph Aleman ("Joseph"), a non-African American man, was also in the lobby and looked "visibly irate, angry and discontent." (*Id.* ¶¶14, 29).

Plaintiffs and Cancel then moved their conversation outside while Joseph remained inside. (*Id.* ¶¶32, 46). After a few minutes, plaintiffs and Cancel went back into the lobby to gather writing materials to document plaintiffs' concerns. (*Id.* ¶33). When plaintiffs returned to the lobby, Joseph continued to stare at them while looking "irate and threatening." (*Id.* ¶34). Plaintiffs also observed Joseph walking in restricted areas, such as behind the desk and around the car bays, and engaging in conversations with Jiffy Lube managers and employees. (*Id.* ¶35). It seemed to plaintiffs that Joseph was either an employee of Jiffy Lube or security hired by Jiffy Lube. (*Id.* ¶43).

Plaintiffs and Cancel moved back outside to continue discussing maintenance on Stephens' car. (*Id.* ¶47). While they were outside for the second time, Joseph "walked up with apparent anger and irritation." (*Id.* ¶47–48). As Joseph approached them, plaintiffs both observed that one of his hands remained in his pocket. (*Id.* ¶49). Joseph asked Cancel the following question: "you good with these Black motherfuckers?" (*Id.* ¶50). He then pulled a black firearm with a white handle from his pocket. (*Id.* ¶52). After brandishing the weapon, Joseph began to walk away and shouted, "[f]uck them Black motherfuckers." (*Id.* ¶59). He also claimed to "have a concealed carry" license. (*Id.* ¶134). Stephens then called the police. (*Id.* ¶60).

Cancel unsuccessfully attempted to calm Joseph down and then walked back over to plaintiffs. (*Id.* ¶¶61–62). She told plaintiffs: "don't mind him," "he's just crazy," and "he's just off." (*Id.* ¶¶64–66). During this time, Joseph continued to spew offensive racist statements,

including "fuck you, niggers," "oh, you a tough, nigger?" and "I'll shoot the shit out of these Black motherfuckers." (*Id.* ¶¶77–79).

Cancel tried to convince plaintiffs that the weapon was not a firearm but instead a can of mace. (*Id.* ¶71). Stephens was still on the phone with the police at this time. (*Id.* ¶73). He told Cancel, "if it's mace, have him show us." (*Id.*). He repeated this request two or three times. (*Id.* ¶74). Joseph overheard Stephens asking about the weapon and shouted, "you want to see it?" (*Id.* ¶¶75, 80). Joseph pulled the firearm from his pocket again and pointed it at plaintiffs while continuing to shout racial profanities. (*Id.* ¶¶86–88).

At some point during this exchange, Rafael Aleman ("Rafael"), a Jiffy Lube employee and Joseph's son, approached the scene. (*Id.* ¶¶16, 93, 129). Rafael told Cancel to disregard plaintiffs' concerns because "you know how they are." (*Id.* ¶93). Plaintiffs understood this comment to be related to their race. (*Id.* ¶94). Joseph walked toward the street and turned around, at which point Rafael motioned at him to move back toward the Jiffy Lube building. (*Id.* ¶¶130, 143; Dckt. #23 at 83 (surveillance video)). Joseph then moved toward Rafael while brandishing the gun at plaintiffs. (Dckt. #23 ¶¶130, 143). Throughout the incident, plaintiffs observed that Degeatano employees "continued to have nice, amicable, and cooperative interactions and discussions" with Joseph. (*Id.* ¶296).

As the police approached, Joseph got into his vehicle and left the premises. (*Id.* ¶¶103–04). He was ultimately charged with aggravated assault in connection with the incident at Jiffy Lube. (*Id.* ¶113).

After Joseph left, Stephens inquired about him. (*Id.* at 77). Cancel explained that Jiffy Lube employed Rafael, but not his father, Joseph. (*Id.*). Following the incident, plaintiffs obtained an eleven-second video recording depicting one instance during which Joseph pulled

and pointed a gun at plaintiffs. (*Id.* ¶112). This video was a cell phone recording taken by the responding police officer of a portion of Jiffy Lube's original surveillance video recording. (*Id.*). The responding officer requested a copy of Jiffy Lube's surveillance video for the duration of the entire incident. (*Id.* ¶114). The officers reached out twenty-three days later to obtain a copy of the tape, but were informed that it was deleted, despite a company policy to retain videos for thirty days. (*Id.* ¶117–18). On March 6, 2023, plaintiffs sent an evidence preservation letter to Degeatano asking it to preserve its tapes of the incident. (*Id.* ¶116).

## III.    ANALYSIS

Defendants move to dismiss each of the federal and state claims lodged against them on the grounds that plaintiffs have not sufficiently alleged: (1) the elements of their claims; or (2) that Joseph had apparent agency to act on behalf of Degeatano. The Court's finding on defendants' apparent agency argument informs its ability to consider plaintiffs' allegations regarding Joseph's conduct in deciding defendants' motions to dismiss, thus the Court begins its analysis there. Because the Court finds that plaintiffs have properly alleged facts from which apparent agency could be found, the Court then turns to plaintiffs' federal claims under 42 U.S.C. §§1981, 1985, and 1986—which it finds are sufficiently alleged—before reaching plaintiffs' state law claims for assault, intentional infliction of emotional distress, and spoliation of evidence—which also survive defendants' motions to dismiss.[2]

### A.    Plaintiffs Sufficiently Allege Facts Showing Joseph Was an Apparent Agent of Degeatano.

Throughout their motions, defendants argue that plaintiffs cannot hold Degeatano liable for Joseph's conduct because plaintiffs fail to allege that Joseph was an apparent agent of

---

[2] The Court does note—as defendants have observed, (Dckt. #31 at 1 n.1) —that plaintiffs' fifteen-page response brief fails to adhere to the font and margin requirements of the Local Rules. *See* L.R. 5.2 ("Where the document is typed . . . (1) the size of the type in the body of the text shall be 12 points and

Degeatano.  Because the Court's finding on defendants' apparent agency argument informs its ability to consider plaintiffs' allegations regarding Joseph's conduct in deciding defendants' motions to dismiss, the Court addresses it first.[3]

### 1.     Apparent Agency

Under Illinois law, "an agent may bind his principal by acts which the principal has not given him *actual* authority to perform, but which he *appears* authorized to perform." *Lundberg v. Church Farm, Inc.*, 502 N.E.2d 806, 813 (Ill. 1986).  Apparent agency arises when the principal holds an agent out as possessing the authority to act on its behalf, and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct. *Letsos v. Century 21–New West Realty*, 675 N.E.2d 217, 224 (Ill.App.Ct. 1996).  Thus, apparent authority must derive from acts of the principal. *Lundberg*, 502 N.E.2d at 813.  The elements of apparent agency are that (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2) based on the actions of the principal and agent, the third person reasonably concluded that the party was

---

that in footnotes, no less than 11 points, and (2) the margins, left-hand, right-hand, top, and bottom, shall each be a minimum of 1 inch.")  The Court, in its discretion, will not strike plaintiffs' brief in this instance despite the fact that it does not conform to the Local Rules.  Plaintiffs are placed on notice that any future non-compliant briefs may be stricken without further notice, and they are advised to seek leave to file an oversized brief if they believe that they need more space to respond to a motion than the Local Rules would ordinarily provide.

[3] Plaintiffs maintain that their agency argument is not limited to apparent authority, and that they also allege that Joseph had actual authority to act on behalf of Deteagano.  Joseph, for his part, moves to dismiss based on his argument that plaintiffs have not alleged facts sufficient to establish he had actual authority.  As the Seventh Circuit explained in *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021), a court need not reach all of a plaintiffs' agency theories on a motion to dismiss.  Where one theory is sufficiently pleaded, plaintiff states a plausible claim for relief and his complaint may proceed. *Id.* Because the Court finds that plaintiffs in the instant case have plausibly alleged an apparent agency theory of agency liability, its analysis starts and ends there. *Id.* ("Bilek states a plausible claim for relief under his actual authority theory of agency liability, so we start and end there.").

an agent of the principal, and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *Id.*

Defendants proffer two arguments as to why plaintiffs have not sufficiently alleged apparent agency: (1) plaintiffs fail to allege that they justifiably and detrimentally relied on Joseph's apparent agency; and (2) plaintiffs attempt to establish apparent authority based on the acts of the agent—Joseph—rather than the acts of the principal—Degeatano. Neither argument is availing.

First, defendants argue that plaintiffs fail to allege that they justifiably relied on Joseph's apparent authority to their detriment because, when faced with his offensive conduct, they called the police. (Dckt. #29 at 9). This argument is plainly incorrect. While plaintiffs do not specifically use the word reliance,[4] they otherwise allege that as a result of Joseph's offensive and unpredictable racist and violent conduct, they "feared that [Joseph] intended to shoot them," "feared that [Joseph] would cause them severe bodily injury," were threatened to the extent that they called the police, and were deprived of their right to make and enforce contracts. (Dckt. #23 ¶¶60, 90, 92, 142). Detrimental reliance is therefore adequately alleged. *See Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F.Supp.2d 846, 862 (N.D.Ill. 2004) (finding plaintiff's knowledge of the representations and detrimental reliance thereon could be inferred from the allegations of the complaint even where there was no express reliance on those representations); *Stankiewicz v. DuPage Med. Grp., Ltd.*, No. 18 C 3823, 2020 WL 6044289, at

---

[4] It is clear that a plaintiff is not required to use the word "reliance" to adequately allege the reliance element of a claim. *See Weaver v. First Bank of Schaumburg*, No. 83 C 6591, 1987 WL 10972, at *19 (N.D.Ill. May 8, 1987) (finding that plaintiff's allegations of fraud satisfied the requirements of Rule 9(b) even though the word "reliance" was not used).

*6 (N.D.Ill. Oct. 13, 2020) (concluding the plaintiff may have detrimentally relied where she took actions she may not have otherwise taken but for the representations).

Defendants point out that Illinois law holds that "notice to a third party of impropriety on the part of a person or entity otherwise appearing to be an agent . . . negates the appearance of authority." *Lincoln Cardinal Partners v. Barrick*, 578 N.E.2d 316, 319 (Ill. 1991). Relying on this principle, defendants argue that any appearance of authority was negated because Cancel characterized Joseph's behavior as "crazy" and "off" and plaintiffs themselves allege that Joseph's behavior was "beyond all bounds of common decency." While defendants are correct that if plaintiffs had "reason to believe that [Joseph was] acting for his own benefit, [plaintiffs] cannot subject [Degeatano] to liability," that principle is inapplicable where—as here—plaintiffs have sufficiently alleged that they believed Joseph was acting as an agent of Degeatano.

In particular, plaintiffs plausibly alleged their belief that Joseph was an employee or hired security personnel based on the fact that he was walking in areas of Jiffy Lube's facility (such as behind the desk and in the car bays) where only employees typically go, and that he was participating in conversations with Degeatano managers and employees as if he were employed there. Furthermore, viewing the facts in a light most favorable to plaintiffs, plaintiffs have plausibly alleged that Joseph was working for the benefit of Jiffy Lube, not himself, because no Degeatano employee called the police when Joseph brandished his firearm and the store manager tried to dismiss Joseph's dangerous conduct by describing him as "crazy" and "off" and did not ask him to leave or otherwise try to have him removed from the premises. Moreover, none of the other Degeatano workers objected to Joseph's presence on Jiffy Lube's premises despite the fact that he was armed. To the contrary, one Degeatano employee (Rafael) stopped Joseph as he was leaving the area and motioned him to move back toward the Jiffy Lube's premises *after* Joseph

brandished his gun towards plaintiffs. Accordingly, plaintiffs sufficiently allege that they justifiably and detrimentally relied on Joseph's apparent agency.

Second, defendants argue that plaintiffs fail to establish apparent agency based on the words and conduct of Deteagano. This argument is also incorrect. Again, plaintiffs allege that while Joseph hurled racial slurs, repeatedly pointed a weapon at them, and threatened to shoot, Degeatano employees did not call the police, minimized Joseph's actions by calling him "crazy" and "off," suggested that the weapon was mace rather than a gun, were non-reactive when another employee (Rafael) commented "you know how they are" with reference to plaintiffs, motioned to Joseph to advance on plaintiffs with his gun, and otherwise continued to have "nice, amicable, and cooperative interactions" with Joseph. (Dckt. #23 ¶¶39, 59, 77–79, 87–88, 93, 133–34, 158, 296). Viewing the facts in a light most favorable to plaintiffs, as the Court must at this stage, it is clear that plaintiffs have alleged conduct by Degeatano—primarily through the alleged encouragement, acquiescence and/or non-reactiveness of its employes to the armed presence on Jiffy Lube's premises—sufficient to allow apparent agency to be found.[5]

Thus, the Court finds that plaintiffs have sufficiently alleged apparent agency and the Court will consider the actions and conduct of Joseph when ruling on defendants' motions to dismiss.

---

[5] Despite defendants' arguments to the contrary, the fact that plaintiffs were told that Joseph was not employed at Jiffy Lube *after* the incident does not require a different result. At best, this evidence creates a question of fact as to whether Joseph was an agent of defendants that cannot be resolved on a motion to dismiss and must instead be explored during discovery and addressed on summary judgment.

**B.        Plaintiffs Sufficiently Allege a Cause of Action Under 42 U.S.C. §1981.**

Plaintiffs allege that defendants interfered with their right to make and enforce contracts on the basis of their race in violation of 42 U.S.C. §1981.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens. . ." and defines making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981. While litigants most commonly invoke Section 1981 to assert their rights to be free from discrimination while making and enforcing employment contracts, the Seventh Circuit has recognized that a Section 1981 claim can arise where plaintiffs face illegal discrimination in retail establishments. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *McCaleb v. Pizza Hut of Am., Inc.*, 28 F.Supp.2d 1043, 1047-48 (N.D.Ill. 1998). To establish a prima facie claim of such discrimination, plaintiffs must show that (1) they are a member of a racial minority; (2) defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Morris*, 89 F.3d at 413. The parties focus their arguments on the second and third elements, therefore, so does the Court.

**1.        Plaintiffs sufficiently allege that defendants had the intent to discriminate on the basis of race.**

Defendants argue that plaintiffs' Section 1981 claim fails on the element of discriminatory intent. In proving a Section 1981 claim, a plaintiff may present either direct evidence of discrimination or may instead proceed on the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In the context of retail cases under Section 1981, "calling customers 'niggers,' is direct evidence of discrimination." *Green v.*

*Dillard's, Inc.*, 483 F.3d 533, 540 (8th Cir. 2007); *see also Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Moreover, even if "the complaint lacks clarity or specificity on the issue of intent" where plaintiffs accuse defendants of acting because of their race "[t]hat is enough to provide fair notice of the intent element." *See Dugar v. U.S. Bank Nat'l Ass'n.*, No. 21 CV 4052, 2022 WL 2105894, at *4 (N.D.Ill. June 10, 2022). Here, plaintiffs allege that Joseph referred to them as "niggers" and "Black motherfuckers," brandished a firearm because of their race, and intended to shoot them because of their race. These allegations in themselves are sufficient to provide fair notice to defendants of the intent element. *See* Fed.R.Civ.P. 9(b) (intent may be alleged generally).

What's more, the SAC further alleges that Rafael attempted to persuade Cancel to disregard plaintiffs' pleas for redress by stating "you know how they are." Defendants argue that plaintiffs fall short of alleging direct evidence of discrimination because Rafael's statement "you know how they are" could have been a reference to his father, Joseph, or parents in general, rather than to plaintiffs' race. This argument asks this Court to interpret Rafael's statement in a light most favorable to defendants. The Court does not—and indeed, cannot—do so. *Yeftich*, 722 F.3d at 915 (When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor.").[6]

Accordingly, the Court finds that plaintiffs have adequately alleged the discriminatory intent element of their Section 1981 claim.

---

[6] Defendants also argue that plaintiffs cannot establish a Section 1981 claim because the discriminatory intent—i.e., Joseph's offensive speech and behavior—was not related to the underlying act in question, i.e.,the contractual service of Stephens' vehicle. In support, defendants rely on a single case where the court held plaintiff could not prevail on his Title VII claim because he failed to show that stray remarks in the workplace were not related to the discharge decision making process. *See Cowan v. Glenbrook Sec.*

## 2. Plaintiffs sufficiently allege that defendants' discrimination concerned the making or enforcing of a contract.

Defendants argue that plaintiffs' claims alternatively fail under the third element of a Section 1981 claim because plaintiffs were not denied the right to contract. Specifically, defendants argue that there was no store policy against serving African Americans and Joseph's conduct merely deterred—rather than prevented—plaintiffs from making a purchase or receiving further service at Jiffy Lube. (Dckt. ##29 at 11; 49 at 7).[7] But the cases relied upon by defendants in support of these arguments are inapposite as they were either decided on summary judgment or involved situations where there is no evidence that plaintiffs were subjected to racial slurs, the brandishing of a firearm, or the deprivation of the service they sought. *See e.g.*, *Sampson v. Village Discount Outlet, Inc.*, 832 F.Supp. 1163 (N.D.Ill. 1993), *aff'd*, 43 F.3d 1474 (7th Cir. 1994) (dismissing Section 1981 claim where the plaintiff failed to allege "any specific acts, practices or policies that sufficiently support his allegation that he was treated any differently than a 'white citizen' because of his [Jewish] ethnicity."); *Cavalier v. Speedway, LLC*, No. 20-CV-03883, 2022 WL 900195, at *4 (N.D.Ill. Mar. 28, 2022) (granting summary

---

*Servs. Inc.*, 123 F.3d 438, 444 (7th Cir. 1997). However, *Cowan* is inapposite because plaintiffs have alleged that Joseph's dangerous actions directly frustrated their efforts to obtain service from Jiffy Lube.

[7] Defendants perfunctorily argue—via a footnote in their moving brief and two sentences in their reply—that Harris has not alleged a contractual relationship between himself and Degeatano because he was present at the scene only to "'accompan[y] his friend' Stephens." (*See* Dckt. #31 at 9 (citing SAC ¶20); *see also* Dckt. #29 at 11 n. 3). Defendants do not provide any analysis or citation to authority to support this argument, and the Court considers it waived. *See, e.g.*, *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 817 (7th Cir. 2018) ("Because Chicago Joe's raised the issue only in a footnote and without any citation, this issue was waived."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (arguments which are underdeveloped or unsupported by legal authority are waived).

judgment on Section 1981 claim where the defendant offered to make the plaintiff a new sandwich thereby providing him with the full value of his purchase).

The present case is much more analogous to *McCaleb v. Pizza Hut of America, Inc.*, 28 F.Supp.2d 1043, 1046–48 (N.D.Ill. 1998), on which plaintiffs rely. In that case, plaintiffs—an African American family—went to Pizza Hut for dinner. *Id.* at 1044. Although they arrived just before closing, Pizza Hut had a policy of allowing customers to stay and finish their meals. *Id.* at 1046. As the McCaleb family entered the restaurant, one of the employees stated, "I'm not serving those niggers." *Id.* at 1046. While the McCalebs were inside the restaurant, several Pizza Hut employees committed a series of actions aimed at disrupting the McCalebs' meal including refusing their request for drinks, ignoring their request for plates and silverware, putting the McCalebs' pizzas—which they ordered for dine-in service—in take-away boxes, playing loud music, and repeatedly turning the lights on and off. *Id.* at 1046–47. Unable to complete their meal, the family left, although they were never directly asked to leave. *Id.* at 1047. As the family left, Pizza Hut employees yelled racially derogatory remarks. *Id.* One employee even took up a threatening position with a stick. *Id.* at 1046–47.

On summary judgment, the court rejected the defendants' argument "that plaintiffs' §1981 claims fail[ed] because they were not denied the right to contract in that they were provided their pizza and permitted to eat it." *Id.* at 1047. The court explained that "§1981(b) defines the making and enforcement of contracts as including performance of the contract and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at 1048. The court ultimately concluded that the "defendant failed to provide plaintiffs the full benefits of the contract in that they failed to provide them with the proper utensils with which to eat their pizza and created a disturbing atmosphere in which to eat," and "interfered

13

with the full enjoyment of the contract by driving plaintiffs out before they had completed eating all that they had intended to eat." *Id.*

Likewise, here, plaintiffs have set forth allegations which, taken in the light most favorable to them, plausibly allege that defendants interfered with plaintiffs' full enjoyment of the contract with Jiffy Lube by allowing Joseph to hurl repeated racial insults at plaintiffs, allowing Joseph to repeatedly brandish a weapon and point it in plaintiffs' direction, failing to call the police once the threats began, minimizing Joseph's action by calling him "crazy" and "off," suggesting that the weapon was mace rather than a gun, permitting an employee to comment "you know how they are" without consequence, and otherwise allowing their employees to have "nice, amicable, and cooperative interactions" with Joseph. (Dckt. #23 ¶¶39, 59, 77–79, 87–88, 93, 133–34, 158, 296). In all, plaintiffs plausibly allege that defendants' actions, and in some instances, inaction, deprived them of the full benefit of their contract and created a disturbing atmosphere sufficient to allege discrimination in making or enforcing a contract under Section 1981. *See McCaleb*, 28 F.Supp.2d at 1046–48; *Green*, 483 F.3d at 539 (finding the plaintiffs had shown an actionable interference with their contractual interest where the employee "did not merely refuse to serve the Greens personally; she actively hindered [her co-workers'] service as well.").

Accordingly, the Court denies defendants' motions to dismiss plaintiffs' Section 1981 claims.

**C.    Plaintiffs Sufficiently Allege a Cause of Action Under 42 U.S.C. §1985(3) for Conspiracy.**

Plaintiffs assert conspiracy claims under Section 1985(3) based on their allegations that as Joseph was walking away, Rafael motioned for him to advance toward plaintiffs again, with which Joseph complied, while brandishing the gun.  (Dckt. #23 ¶¶130, 143).

A 1985(3) claim provides a plaintiff with a cause of action where the alleged conspiracy deprives him of "equal protection of the laws" or "equal privileges and immunities under the laws."  *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022).  To succeed on a 1985(3) claim, the plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Id.*, *quoting Un. Bhd. Of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983).  Also required is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Bowman v. City of Franklin*, 980 F.2d 1104–1109 (7th Cir. 1992).

Defendants argue that plaintiffs' conspiracy claim cannot succeed because, even accepting as true plaintiffs' allegation that Joesph was an employee of Deteagano, defendants were all acting within the scope of their employment and therefore are not separate persons capable of entering into a conspiracy (the "intra-corporate conspiracy doctrine").  In addition, they contend that the conspiracy claim must fail because it depends upon plaintiffs' Section 1981 claim, which is inadequate.  The Court can dispose of the second argument quickly based on its

previous conclusion that the Section 1981 claim is sufficient, and so it turns to the parties' arguments regarding the intra-corporate conspiracy doctrine.

Under the doctrine, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994) (citing *Travis v. Gary Community Mental Health Center,* 921 F.2d 108, 110 (7th Cir. 1990)). As plaintiffs point out, however, the doctrine does not extend to conspiracies motivated "solely" by the "personal bias" of the individual conspirators or if the conspiracy "was part of some broader discriminatory pattern . . . or that it in any way permeated the ranks of the organization's employees." *Hartman v. Bd. of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 470–71 (7th Cir. 1993).

To reiterate, plaintiffs allege that Joseph spouted repeated racial insults at them, including, "fuck you, niggers," "oh, you a tough, nigger?" and "I'll shoot the shit out of these Black motherfuckers," (*id.* ¶77–79), while intermittingly pointing a firearm in their direction. Plaintiffs further allege that Rafael and Cancel seemingly permitted, encouraged, and facilitated Joseph's actions by failing to call the police, dismissing and minimizing Joseph's offensive language and the presence of the gun, and, in the case of Rafael, motioning Joseph to reapproach plaintiffs with his weapon drawn. These allegations show the presence of a purely personal motivation that is not barred by the intra-corporate conspiracy doctrine. *See McCraven v. City of Chicago*, 18 F.Supp.2d 877 (N.D.Ill. 1998) (allegations that defendants discriminated against the

plaintiff solely because of his race were "sufficient to take [the] case outside the intracorporate immunity doctrine.").

Defendants respond that plaintiff should be barred from raising a claim of personal bias or a discriminatory pattern or scheme because those theories were not alleged in the SAC. However, "Rule 8 requires only that a complaint must set forth plausible facts that, if true, would support a claim for relief," and "plaintiffs do not need to plead legal theories." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (cleaned up). Defendants further argue that even if the underlying facts are taken as true, they do not show a racial discriminatory intent because Rafael's "you know how they are" comment has no clear racial intent and Cancel's actions suggest that she was "trying to diffuse the situation." (Dckt. #31 at 9–10). Defendants again ask this Court to improperly interpret the allegations in a light most favorable to them, and this Court, again, declines. *Yeftich*, 722 F.3d at 915.

Finally, the Court further rejects defendants' argument that the intra-corporate conspiracy doctrine applies based on defendants' repeated assertion that Joseph is not an employee of Degeatano. Defendants cannot have it both ways for purposes of their motions—i.e., they cannot argue that certain claims should be dismissed because Joseph *is not* employee, while simultaneously arguing other claims should be dismissed because he *is* an employee. Accordingly, this Court finds that plaintiffs plausibly allege a conspiracy claim under Section 1985(3).

### D. Stephens Sufficiently Alleges a Cause of Action Under 42 U.S.C. §1986 for Failure to Prevent a Conspiracy.

Plaintiffs assert claims under Section 1986 against Degeatano for failure to prevent a conspiracy to violate plaintiffs' rights. Defendants' sole argument for dismissal is that the Section 1986 claim must fail because it depends on plaintiffs' Section 1981 and Section 1985(3)

claims, which are inadequate. As set forth above, plaintiffs' Section 1981 and Section 1985(3)

claims are adequate, thus defendants' motions to dismiss plaintiffs' Section 1986 claim is denied.

### E. Plaintiffs Sufficiently Allege Their State Law Claims.

#### 1. Plaintiffs sufficiently allege a claim for spoliation of evidence where they allege that Degeatano owed them a duty to preserve video evidence.

Plaintiffs' spoliation claim is based on their allegations that Degeatano failed to preserve

the Jiffy Lube surveillance video which depicts their encounter with Joseph.

In Illinois, a claim for spoliation of evidence is a subset of negligence,[8] which requires a

plaintiff to prove, "the existence of a duty owed by the defendant to the plaintiff, a breach of that

duty, an injury proximately caused by the breach, and damages." *Boyd v. Travelers Ins. Co.*, 652

N.E.2d 267, 270 (Ill. 1995). While the general rule in Illinois is that "there is no duty to preserve

evidence," *id.*, a duty can nevertheless arise out of a relationship forged "through an agreement, a

contract, a statute, or another special circumstance or the defendant's affirmative conduct,"

*Miller v. Gupta*, 672 N.E.2d 1229, 1233 (Ill. 1996). "Illinois courts have not precisely defined

what constitutes a 'special circumstance,' but 'something more than possession and control are

required, such as a request by the plaintiff to preserve the evidence and/or the defendant's

segregation of the evidence for the plaintiffs benefit.'" *Hart v. Amazon.com, Inc.*, No. 15 CV

---

[8] The SAC asserts negligent and intentional spoliation under Illinois state law, as well as spoliation under federal law. (Dckt. #23 ¶107). As defendants point out, Illinois does not recognize a cause of action for intentional spoliation, *see Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004) ("*Boyd* remains our watershed pronouncement on spoliation of evidence. In *Boyd*, we declined to recognize spoliation of evidence as an independent tort and instead held that a spoliation claim can be stated under existing negligence principles."), and spoliation does not give rise to an independent claim under federal law, *see Woods v. Cooke*, No. 1:14-CV-79-JMS-MJD, 2014 WL 1414573, at *2 (S.D.Ind. Apr. 11, 2014) ("there is no authority for him to bring a freestanding spoliation action under federal law."). Plaintiffs do not address these points in their opposition and instead focus their argument on negligent spoliation under Illinois state law. The Court therefore finds that these arguments are waived and that plaintiffs intend to proceed on only a negligent spoliation theory. *See Schaefer*, 839 F.3d at 607.

18

01217, 2015 WL 8489973, at *6 (N.D. Ill. Dec. 8, 2015), *quoting Martin v. Keeley & Sons, Inc.*,

979 N.E.2d 22, 31 (Ill. 2012).

Defendants argue that plaintiffs have not alleged the existence of a duty—owed by

Degeatano to plaintiffs—to preserve the video surveillance evidence because: (1) the police, not

plaintiffs, requested that Degeatano preserve the video footage on the day of the incident; and (2)

plaintiffs did not issue their evidence preservation request until March 6, 2023 (nearly three

months after the incident), by which time Degeatano had provided the security camera hard

drives to the Oak Park Police Department, who learned that the video footage could not be

recovered.  (Dckt. #29 at 6–7.)  Thus, according to defendants, no duty to preserve arose because

Degeatano was no longer in possession of the evidence and therefore could not segregate it for

plaintiffs' benefit.  (*Id.* at 7.)

As part of their response, plaintiffs supplemented their pleading with an affidavit from

Harris.  In that affidavit, Harris explains that on the day of the incident he "brought the video to

Jiffy Lube's attention so as to notify [it] to preserve the video," asked "Store Manager Cancel to

preserve the video," asked "District Manager Adam Fraile to preserve the video," and was

"assured . . . several times that the video would be preserved and shared . . ."  (Dckt. #30-2 at

23–24).

Defendants argue that facts derived from Harris' affidavit cannot be considered in

deciding their motions to dismiss because those facts were not alleged in the SAC and are

inconsistent with the facts that were alleged.  (Dckt. #31 at 2–4).  Defendants are incorrect.

First, the Seventh Circuit is clear that a party "need not put all of the essential facts in the

complaint; he may add them by affidavit or brief."  *Help At Home Inc. v. Medical Capital,

L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001); *see also Hrubec v. National R.R. Passenger Corp.*,

981 F.2d 962, 963 (7th Cir. 1992) (same).  Second, contrary to defendants' assertions otherwise, the facts set out in Harris' affidavit are consistent with the facts alleged in the SAC.  *See Help At Home Inc.*, 260 F.3d at 752–53 (permitting a party to supplement his complaint with an affidavit as long as the "facts are consistent with the allegations of the complaint.").  In the SAC, plaintiffs allege that they called the police during the incident, had knowledge that the police requested a copy of the surveillance video on the day of the incident, and sent an evidence preservation letter to Degeatano regarding the surveillance video on March 6, 2023.  (Dckt. #23 ¶¶60, 114–16).  The additional information offered by Harris, that plaintiffs *also* requested the surveillance video on the day of the incident—and received assurances that the video would be preserved—is not inconsistent with the allegations in the SAC and therefore can be considered by this Court in deciding defendants' motions to dismiss.  *Help At Home Inc.*, 260 F.3d at 752–53 (finding the district court properly considered writings between the parties and an affidavit submitted with a response to a motion to dismiss when ruling on the motion).

Thus, considering the allegations in the SAC and Harris' allegations that he asked Jiffy Lube employees to preserve the video and was assured that his request would be complied with, the Court finds that plaintiffs sufficiently alleged Deteagano owed them a duty to preserve the surveillance video evidence.[9]  Accordingly, defendants' motions to dismiss plaintiffs' spoliation of evidence claim is denied.

## 2. Plaintiffs Adequately Allege Claims for Assault and Intentional Infliction of Emotional Distress.

Defendants predominate argument on plaintiffs' assault and intentional infliction of emotional distress claims is that Degeatano cannot be held vicariously liable for the conduct of

---

[9] Defendants do not contend in their motions that plaintiffs have failed to plead facts regarding the remaining elements of negligent spoliation (breach, injury, and damages).

Joseph as its apparent agent. For the reasons discussed in Section III(A)(1), that argument is unavailing.

Defendants further argue that Degeatano can only be liable for assault and intentional infliction of emotional distress if plaintiffs can establish an employee-employer or agency relationship, which they cannot do because Cancel told plaintiffs after the incident that Joseph was not a Jiffy Lube employee. Defendants confuse plaintiffs' burden to establish liability to win their lawsuit—at trial or summary judgment—with the plaintiffs' minimal burden to give notice of their claims to withstand a motion to dismiss. *Frieri v. City of Chicago*, 127 F.Supp.2d 992, 996 (N.D.Ill. 2001). This Court need not—and indeed, cannot—resolve the question of whether Joseph is an employee or agent of Jiffy Lube on a motion to dismiss; rather, the Court need only find that plaintiffs have given notice of its claims against defendants. Here, plaintiffs have plausibly alleged that Joseph was an employee or agent of defendants based on the facts that have been detailed above in Section III(A).

In any event, plaintiffs assert that even if they had failed to plausibly allege that Joseph was an agent of Degeatano, the facts alleged by them in the SAC are sufficient to establish the direct liability of Degeatano for Joseph's actions under a premises liability theory. Defendants respond that plaintiffs should be barred from raising a premises liability theory because it was not alleged in the SAC. But, again, as the Seventh Circuit has repeatedly reminded litigants, "Rule 8 requires only that a complaint must set forth plausible facts that, if true, would support a claim for relief," and "plaintiffs do not need to plead legal theories." *Beaton*, 907 F.3d at 1023 (cleaned up).

Under general principles of tort liability, "a person 'can be subject to liability for harm resulting from his conduct if he is negligent or reckless in permitting, or failing to prevent,

negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.'" *Dunn v. Wash. Cty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005).[10]  The Court finds that plaintiffs have adequately alleged actions giving rise to premise liability including that: (i) Joseph was permitted in areas of Jiffy Lube's premises that are ordinarily restricted to employees; (ii) after Joseph drew a firearm while shouting racial slurs at plaintiffs, Degeatano employees verbally downplayed his actions, claimed that his gun was actually mace, and encouraged Joseph to move towards plaintiffs with his firearm after Joseph had started to walk away; (iii) Degeatano employees did not otherwise appear to be shocked, concerned, or worried about the presence of the armed Joseph running about Jiffy Lube's premises pointing a gun at plaintiffs; (iv) Degeatano employees made no attempt to stop Joseph from assaulting and racially threatening plaintiffs during the incident; and (v) Degeatano employees never called the police or took any other action to protect plaintiffs.

Accordingly, defendants' motions to dismiss plaintiffs' assault and intentional infliction of emotional distress claims is denied.

## CONCLUSION

For all the reasons stated above, defendants' motions to dismiss, (Dckt. ##28, 46), are denied.  Defendants shall answer plaintiffs' SAC by September 8, 2025.

**DATE: August 18, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[10] The Seventh Circuit language in *Dunn* is clear that an employee-employer relationship is *not* required for liability to attach.  *Dunn*, 429 F.3d at 691 ("Because liability is direct rather than derivative, it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer.")  Defendants' arguments to the contrary are rejected.